No. 178. CHASE NATIONAL BANK, TRUSTEE, ET AL. *v.* CHESTON ET AL.;

No. 179. CHASE NATIONAL BANK, TRUSTEE, ET AL. *v.* METROPOLITAN LIFE INSURANCE CO.;

No. 180. CHASE NATIONAL BANK, TRUSTEE, ET AL. *v.* CENTRAL HANOVER BANK & TRUST CO. ET AL., TRUSTEES;

No. 181. CHASE NATIONAL BANK, TRUSTEE, ET AL. *v.* NATIONAL CITY BANK, TRUSTEE;

No. 182. CHASE NATIONAL BANK, TRUSTEE, ET AL. *v.* TRAPHAGEN ET AL.;

No. 183. CHASE NATIONAL BANK, TRUSTEE, ET AL. *v.* BLAINE ET AL.;

No. 184. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO. *v.* METROPOLITAN LIFE INSURANCE CO.;

No. 185. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO. *v.* CENTRAL HANOVER BANK & TRUST CO. ET AL., TRUSTEES;

No. 186. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO. *v.* NATIONAL CITY BANK, TRUSTEE;

No. 187. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO. *v.* CHESTON ET AL.;

No. 188. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO. *v.* TRAPHAGEN ET AL.;

No. 189. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO. *v.* BLAINE ET AL.;

Nos. 190, 191, 192 and 193. AXELROD ET AL. *v.* FLEMING ET AL., TRUSTEES, ET AL.

*Loy N. McIntosh* for Harrison, Jr. et al., Protective Committee for the Chicago, Rock Island & Pacific Railway Co., petitioners in Nos. 178, 179, 180, 181, 182 and 183. *John Gerdes* and *Henry F. Tenney* for petitioner

in Nos. 184, 185, 186, 187, 188 and 189. *Harry Kirshbaum* for petitioners in Nos. 190, 191, 192 and 193. *Edward W. Bourne, Frank H. Towner, Jesse E. Waid, Wilkie Bushby, Joseph Schreiber, Alexander M. Lewis, Sanford H. E. Freund, Edward K. Hanlon* and *Daniel James* for respondents.

MR. JUSTICE RUTLEDGE:

I join in the Court's denial of the petition for certiorari. But unusual circumstances in this case seem to call for explanation of my reasons for doing so.

The debtor has been in reorganization, pursuant to § 77 of the Bankruptcy Act, as amended, 11 U. S. C. § 205, since 1933. On May 1, 1944, the Interstate Commerce Commission approved the plan of reorganization involved in this proceeding. On June 15, 1945, the District Court also approved the plan. That action in turn was affirmed by the Circuit Court of Appeals, 157 F. 2d 241, and this Court denied certiorari. 329 U. S. 780, 811.

While the proceeding was pending in the Circuit Court of Appeals, however, the District Court directed the Commission to submit the plan for acceptance or rejection to eleven classes of creditors. On February 26, 1946, the Commission certified that the plan had been accepted by nine of those classes, rejected by two. Under the plan the claims of three accepting classes substantially were satisfied in full. The other six accepting classes, however, were to receive participations which would fail to satisfy their claims by nearly $106,000,000, if the new non-par common stock allotted to them were treated as worth $50 per share. Nevertheless the larger of the two rejecting groups, the holders of the Convertible Bonds, was allotted 160,078 of the total issue of 1,522,672 shares of new common stock, thus receiving an interest in the equity of the reorganized company in excess of ten per cent.

Objections to confirmation were filed on behalf of some members of the larger rejecting class and on their motion the District Court, notwithstanding its recent prior approval, found the plan inadequate to afford holders of the Convertible Bonds fair and equitable treatment; concluded that their rejection was reasonably justified; and referred the case back to the Commission for consideration of alleged changed conditions with a view to possible modifications or the proposal of new plans. The District Court's memorandum opinion rendered June 28, 1946, made no reference to this Court's opinion in *Reconstruction Finance Corp.* v. *Denver & R. G. W. R. Co.*, 328 U. S. 495, which was handed down on June 10, 1946.

The order of the District Court was reversed on appeal by the Circuit Court of Appeals and the cause was remanded to the District Court with instructions to confirm the plan. 160 F. 2d 942. It is this action which the present petitions seek to overturn.

The Court of Appeals examined the claims of alleged change in conditions, occurring between May 1, 1944, when the Commission approved the plan, and June 28, 1946, when the District Court's order was entered refusing confirmation and remanding the case to the Commission.[1] 160 F. 2d 942, 945. The examination was made in the light of our decisions in *Reconstruction Finance Corp.* v. *Denver & R. G. W. R. Co.*, 328 U. S. 495, and *Insurance Group* v. *Denver & R. G. W. R. Co.*, 329 U. S. 607. The Court found that factually the progress of the plan in this case had been comparable to that of the plan in the *Rio Grande* proceedings. And testing each of the alleged charges by the *Rio Grande* rulings, it concluded that none

[1] It may be noted that the period covered by the alleged changes includes only a little more than two years, and that the time expiring between the District Court's approval of the plan on June 15, 1945, and its subsequent refusal of confirmation was only about two weeks in excess of one year.

of them was of a kind not "envisaged and considered by the Commission in its deliberations upon or explanations of the plan." *Reconstruction Finance Corp.* v. *Denver & R. G. W. R. Co.*, 328 U. S. 495, 522; *Insurance Group* v. *Denver & R. G. W. R. Co.*, 329 U. S. 607, 613; see 160 F. 2d 942, 949.

The record in this case seems clearly to bear out those conclusions. Accordingly, but for one additional fact to be noticed, it would seem clear that certiorari should be denied, without more, on the authority of the *Rio Grande* decisions.[2]

This case however is embarrassed by an unusual circumstance not present in the *Rio Grande* proceedings. That circumstance is to be found in a letter submitted to this Court on October 9, 1947, while the cause was pending here on application for certiorari, by the chairman of the Commission and pursuant to its direction.

The letter is set forth in the margin,[3] copies having been made available to counsel by this Court's direction. And

---

[2] This conclusion in my judgment would follow notwithstanding the plan involved in those cases had been confirmed, whereas here only approval has been given and confirmation is lacking. Absent any substantial difference in the facts presented as establishing changed conditions to justify upsetting the plan and sending it back to the Commission, the mere fact that such action is sought after approval but before confirmation in one case and after confirmation in another, should not be sufficient to dictate different results in the disposition of the plans.

[3] "Interstate Commerce Commission

Washington 25

October 9, 1947.

"Honorable Fred M. Vinson,
Chief Justice of the United States,
United States Supreme Court,
Washington, D. C.

"My dear Mr. Chief Justice:

"In connection with the petitions for the issuance of a writ of certiorari now pending before the Court, Nos. 184–9, In the Matter

the question which now seems to me perhaps most important, in connection with the disposition of this cause, is the effect which should be given to this communication.

The reasons for transmitting the letter at this late stage in the proceedings may be a matter of some conjecture, in view of the fact that, as we have been informed, on October 1, 1947, the Commission expressly refused to grant the request of an attorney that it file a brief *amicus curiae* in this cause indicating its views on the petition for certiorari, and ask that the case be referred by the Court back to it for consideration, investigation and possible revision of the plan. But, entirely apart from this, the

of The Chicago, Rock Island and Pacific Railway Company, a reorganization proceeding, we direct attention, if we may properly do so, to certain matters which the Court may desire to consider in the exercise of its discretion in passing on the petition for the writ.

"As we understand it, the petitions for the writ seek to bring up to the Supreme Court by certiorari the order of the Circuit Court of Appeals for the Seventh Circuit, which reversed the order of the district judge whereby the district judge had ordered the plan of reorganization sent back to this Commission for further proceedings.

"Upon receiving notice of the action of the district court, the Interstate Commerce Commission set the plan for further hearing. The appeal to the Circuit Court of Appeals then intervened, and the hearing date was canceled, and the matter has remained in suspense upon the Commission's docket.

"Since the plan was sent to the district court by the Commission there have been material changes in the situation as it affects the condition of the debtor. The Commission, of course, does not attempt to appraise the effect of these changes so far as they may affect the provisions of the plan, which we understand are developed at length in the record in the courts.

"The object of this letter is to advise the Court that should certiorari be granted and the plan eventually be remanded to the Commission, the Commission is prepared to give full hearing on the facts and a report thereon as may be warranted.

"By the direction of the Commission.

Respectfully,

[s] Clyde B. Aitchison
Chairman."

question remains whether the Commission's communication furnishes sufficient cause for changing the disposition which, in my opinion, should be made of the case on the record presented but for the letter's effect.

Guardedly phrased, the letter's only positive assertion bearing upon the merits of our disposition is the statement: "Since the plan was sent to the district court by the Commission there have been material changes in the situation as it affects the condition of the debtor." The Commission, however, "does not attempt to appraise the effect of these changes so far as they may affect the provisions of the plan, which we understand are developed at length in the record in the courts."

The Commission does not suggest that it has examined the record in this cause, as made by the parties; that in the light of that record changes have occurred since its approval of the plan in May, 1944, of a character, unlike the changes in the *Rio Grande* cases, not "envisaged and considered" by it in its deliberation upon or explanation of the plan. Nor does it ask this Court either to be permitted to file a brief here or to be heard upon argument in the event certiorari is granted. There is indeed no suggestion that certiorari should be granted, but only one that if that should be done and the plan eventually remanded to the Commission, it "is prepared to give full hearing on the facts and a report thereon as may be warranted."

The letter comes down therefore to a statement that there have been material changes in the debtor's condition since the Commission's approval was given, and to the statement that if the Court finally should remand the case to it the Commission is prepared to do its duty by affording a further full hearing and rendering a further report. In addition the possible, though by no means certain, inference might be drawn that the Commission may

desire another opportunity to consider the plan before it goes to confirmation.

The tenuous character of the Commission's suggestion makes it a matter highly embarrassing for the discharge of our function, which under the law is to determine the rights of the parties as they appear from the record presented for our consideration and pursuant to the controlling authorities. If the Commission had knowledge of facts, appearing either from the record here or from other sources, which in its opinion would disclose or probably would disclose changed circumstances, since its approval of the plan, not "envisaged and considered" by it, within the rule of the *Rio Grande* cases, and of a character likely to require substantial modification or complete revision of the plan, it would seem that some representation to that effect would or should have been made, with some supporting factual discussion and conclusions concerning the alleged changes for our assistance. In view of the length of time the application for certiorari has been pending here, it seems hardly likely that such knowledge could have come to the Commission too late for its presentation for our consideration in the regular course of disposition of the petitions for certiorari. And, if the contrary was the fact, then a request for time in which to submit a brief upon the merits of the application for certiorari hardly could have been less appropriate or helpful than the suggestion which has been made.

But the Commission has not tendered its aid in the disposition of the Court's problem relating to what shall be done with the petitions for certiorari. Nor, in my opinion, is the suggestion which the Commission's letter makes a sufficient basis for causing the Court to dispose of those petitions otherwise than as would be done in the absence of that suggestion. At the very greatest the suggestion would merit an invitation by this Court for

the Commission to submit a brief, setting forth in some specific detail its views upon the merits of the applications for certiorari, in order that we might have the aid of those views for the performance of our office. Indeed, out of excess of caution rather than regard for the merit of the Commission's vague and general suggestion as made, that is the course my own preference would follow. Since, however, that course is not to be pursued, I do not find in the mere general suggestion that "there have been material changes in the situation as it affects the condition of the debtor" a sufficient basis for altering the conclusion I have reached on the basis presented by the parties in the record, namely, that none of the admitted and substantial changes is of a character which, within the rulings of the *Rio Grande* cases, would require reopening of this fourteen-year-old reorganization and starting down the long road to consummation again.

Our function in these cases is to apply the law as it has been written by Congress and interpreted in the prior decisions. That law, thus interpreted, seems to me clearly to require denial of the petitions in this cause. The Commission's letter does not afford any adequate basis for reaching a contrary conclusion, and in the absence of any more positive or helpful suggestion upon the merits of the applications as made on the record before us, I agree with the Court that the petitions should be denied.

Mr. Justice Frankfurter and Mr. Justice Jackson, dissenting:

Inasmuch as the Interstate Commerce Commission deems itself not free to file a memorandum of its views except on invitation of the Court, we believe, in view of all the circumstances, that final action on this petition should not be taken without asking the Commission to make a definite statement of its present position.